# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| THE STATE UNIVERSITY OF NEW YORK, acting through its Upstate Medical University campus, d/b/a UNIVERSITY HOSPITAL AT SYRACUSE 750 East Adams Street Syracuse, NY 13210 | ) ) ) ) ) ) | |
| *Plaintiff* | ) ) | Case No._____ |
| v. | ) ) | |
| ROBERT F. KENNEDY, JR. in his official capacity as Secretary of Health and Human Services, 200 Independence Avenue, SW Washington, DC 20201 | ) ) ) ) ) | |
| *Defendant*. | ) | |

## COMPLAINT

The Plaintiff brings this Complaint against Defendant Robert F. Kennedy, Jr., in his official capacity as the Secretary (the "Secretary") of the United States Department of Health and Human Services ("HHS"), and allege as follows:

### I.     NATURE OF THE ACTION

1.     The Medicare program reimburses hospitals for inpatient services through the inpatient prospective payment system ("IPPS"). Payment is calculated for each inpatient encounter by multiplying a base payment known as the "standardized amount," which reflects the national average cost of a typical inpatient encounter, by a prospectively determined rate (diagnosis group, or "DRG") that best describes the treatment administered to the patient. *See* 42 U.S.C. § 1395ww(d).

2.     The Medicare statute requires the Secretary to identify the labor-related share of the standardized amount and to adjust it for each hospital to account for differences in wages and

wage-related costs between geographic areas.  This adjustment is known as the wage index.  The Secretary calculates the wage index annually based on a national survey of the wages and wage-related costs of hospitals.  42 U.S.C. § 1395ww(d)(3)(E).

3.    The Medicare program reimburses hospitals for outpatient services through the outpatient prospective payment system ("OPPS"). OPPS payments are also adjusted by the wage index to account for geographic differences in wage costs.  Under the Secretary's regulations, OPPS payments must be adjusted by the wage index that he annually calculates for IPPS. 42 C.F.R. § 419.43(c)(1).

4.    The Medicare statute contains two provisions that establish a minimum wage index for urban hospitals.  Section 4410(a) of the Balanced Budget Act of 1997 ("BBA"), Pub. L. No. 105-33, § 4410(a), 111 Stat. 251, 402 (1997), and 42 U.S.C. § 1395ww(d)(8)(C)(iii), protect hospitals located in urban areas (or counties) from being paid at a wage index that is lower than the wage index adjustment applicable to hospitals in rural areas of the same state.  These provisions are collectively known as the "rural floor."  This Court has held that "the rural floor and the rural wage index are one and the same." *Citrus HMA, LLC v. Becerra*, 597 F. Supp. 3d 450, 461 (D.D.C. 2022).  The Secretary acquiesced to that decision effective for federal fiscal year ("FY") 2023 and onward.  87 Fed. Reg. 48780, 49004 (Aug. 10, 2022).

5.    In Section 401 of the Medicare, Medicaid, and SCHIP Balanced Budget Refinement Act of 1999 ("BBRA"), enacted two years after the BBA, Congress created a mechanism whereby some hospitals located in urban areas could elect to be treated as being located in rural areas for purposes of the IPPS.  Pub. L. No. 106- 113, § 401, 113 Stat. 1501, 1501A-369 (1999); codified at 42 U.S.C. § 1395ww(d)(8)(E).  The Secretary has acknowledged that the "best reading" of Section 401 is that it "instructs" him to treat urban hospitals that have elected to

reclassify as rural "the same as geographically rural hospitals for the wage index calculation."  88 Fed. Reg. 58640, 58972 (Aug. 28, 2023).

6.      The Secretary did not comply with the rural floor provisions or Section 401 in calculating the rural wage indices and rural floors for FYs 2019 through 2021.  83 Fed. Reg. 41144, 41380-41384 (Aug. 17, 2018); 84 Fed. Reg. 42044, 42332-42336 (Aug. 16, 2019); 85 Fed. Reg. 58432, 58766 (Sept. 18, 2020).  First, the Secretary calculated the rural wage indices and the rural floor using formulas that discriminated between reclassified rural hospitals and geographically rural hospitals, contrary to Section 401's command to treat reclassified rural hospitals the same as geographically rural hospitals.  Second, in FYs 2020 through 2022, the Secretary flouted the "unambiguous[]" instruction of the rural floor provisions by setting rural floors that were not equal to the rural wage indices for the state.  *Citrus*, 597 F. Supp. 3d at 461.  And in accordance with his binding regulation at 42 C.F.R. § 419.43(c)(1), he also used his unlawful IPPS rural wage indices and rural floors to adjust OPPS payments for calendar years ("CYs") 2019 and 2020.  83 Fed. Reg. 58818, 58865 (Nov. 21, 2018) ("CY2019 OPPS Rule"); 84 Fed. Reg. 61142, 61188 (Nov. 12, 2019) ("CY2020 OPPS Rule").

7.      Despite admitting in the IPPS final rule for FY 2024 that the method he used to calculate the rural wage index in prior years did not comply with the "best reading" of the statute, and acquiescing to the *Citrus* decision in the IPPS final rule for FY 2023, the Secretary refused to correct the rural wage indices that he calculated prior to FY 2024 or the rural floors that he calculated for FYs 2020 through 2022.  And since he uses the IPPS rural wage indices and rural floors for OPPS, he has also refused to correct the rural wage indices or rural floors that he used to calculate OPPS payments for CYs 2019 and 2020.

8. The Plaintiff in this case challenges the rural wage indices and rural floors that the Secretary calculated for its respective state in 2019 through 2021. Specifically, the Plaintiff seeks to have (1) its IPPS payments for the appealed years adjusted based on lawfully calculated rural wage indices and rural floors, and (2) its OPPS payments for the appealed years adjusted by the same wage index that is applied to its IPPS payments for those years, as required by 42 C.F.R. § 419.43(c)(1).

9. Plaintiff also challenges the Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873. Section 413.24(j) requires hospitals, at the time they file their annual Medicare cost reports, to identify and present to their Medicare Administrative Contractors ("MACs") unallowable claims for Medicare payment (i.e., claims for payment not permitted under the Secretary's rules) for which the hospitals ultimately intend to seek administrative and/or judicial review. And section 405.1873 provides that if a hospital seeks administrative and/or judicial review for an unallowable claim that it did not report to the MAC at the time of filing its cost report, the Secretary will not be liable for the claim even if the hospital prevails on its claims and a federal court sets aside the Secretary's prior payment determination. These provisions are collectively known as the self-disallowance regulation.

10. The Provider Reimbursement Review Board (the "Board" or "PRRB") ruled that the Plaintiff did not self-disallow its claims for the additional reimbursement it is owed for the rural wage indices and rural floors that the Secretary unlawfully calculated and applied in 2019 through 2021. As a result, even if this Court holds that the Secretary miscalculated the IPPS and OPPS payments owed to the Plaintiff, the Secretary's self-disallowance regulation purports to shield him from liability by instructing his contractors to ignore the Court's judgment unless the court also invalidates 42 C.F.R. §§ 413.24(j) and 405.1873.

4

11.    The self-disallowance regulation is unlawful because the Secretary lacks authority to promulgate it.  Even if the Secretary does have authority to do so, the self-disallowance regulation is still unlawful because it violates the plain language of the Medicare statute governing the administrative review of provider reimbursement claims, and it is arbitrary and capricious. Requiring providers to notify their MACs of the obvious—that a Medicare regulation prohibits payment for a claim—serves no purpose other than to give the Secretary a technical reason to shield himself from liability once that regulation is invalidated.  For years, the Secretary has struggled to justify, both legally and rationally, similar self-disallowance requirements. Indeed, this marks the Secretary's third attempt to impose a self-disallowance requirement as a condition for obtaining relief from administrative and/or judicial review.  The first attempt was invalidated by the Supreme Court, and the Secretary acquiesced in a decision by the United States District Court for the District of Columbia which invalidated his second attempt.  This third attempt should fare no better than the prior two.  Accordingly, Plaintiff asks this Court to find the self-disallowance regulation contrary to the Medicare statute and the Administrative Procedure Act.

## II.    JURISDICTION AND VENUE

12.    This action arises under the Medicare Statute, title XVIII of the Social Security Act, 42 U.S.C. § 1395 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*

13.    Jurisdiction is proper under 42 U.S.C. §§ 1395oo(a)(1)(A)(i), 1395oo(f)(1), 28 U.S.C. §§ 1331 and 1361.

14.    Venue is proper in this judicial district in accordance with 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e).

## III.    PARTIES

15.    The Plaintiff in this action is The State University of New York ("SUNY"), acting through its Upstate Medical University campus, d/b/a University Hospital at Syracuse. It is a hospital that participates in the Medicare program (listed as University Hospital SUNY Health Science Center, Medicare Provider Number 33-0241), is reimbursed under the IPPS and OPPS, and is located in an urban area.  Plaintiff is further identified in Exhibit 1, including its Medicare provider number, cost reporting periods at issue, and PRRB appeal information.

16.    The Defendant, Robert F. Kennedy, Jr., is the Secretary of HHS, which administers the Medicare program established under title XVIII of the Social Security Act.  Defendant Secretary is sued in his official capacity only.  HHS is the federal agency that administers the Centers for Medicare & Medicaid Services ("CMS"), which is the federal agency to which the Secretary has delegated administrative authority over the Medicare program.  References to the Secretary herein are meant to refer to him, his subordinate agencies and officials, and to his official predecessors or successors as the context requires.

## IV.    LEGAL BACKGROUND

**A.    Medicare Payment for Inpatient and Outpatient Hospital Services**

17.    The Medicare program provides federally funded health insurance for certain elderly and disabled persons under title XVIII of the Social Security Act. 42 U.S.C. § 1395, *et seq*. This dispute implicates Medicare Part A, which covers inpatient hospital and certain other institutional services. 42 U.S.C. § 1395d(a)(1). This case also involves Medicare Part B, which covers, among other things, outpatient hospital services. 42 U.S.C. § 1395*l*(t).

18.    Prior to October 1, 1983, Medicare paid hospitals for inpatient services on a retrospective "reasonable cost" basis. 42 U.S.C. § 1395f(b). The Social Security Amendments of

1983 instituted a new prospective payment system for inpatient hospital services known as the IPPS effective for cost reporting periods beginning on or after October 1, 1983. Social Security Amendments of 1983, Pub. L. No. 98-21, § 601, 97 Stat. 65, 149-172 (1983), codified at 42 U.S.C. § 1395ww(d).

19. Under IPPS, payment is calculated for each inpatient encounter by multiplying a base payment amount known as the standardized amount, which represents the national average cost of treating an inpatient, by an adjustment factor known as a DRG, which represents the relative amount of resources the hospital is projected to expend treating the patient. 42 U.S.C. § 1395ww(d).

20. In the BBA, Congress introduced a prospective payment system for outpatient hospital services effective for services furnished on or after August 1, 2000. Pub. L. No. 105–33, § 4523, 111 Stat. 251, 445 (1997). OPPS payments are calculated by multiplying a "conversion factor" by an adjustment factor known as an APC, which like the DRG for IPPS payments, represents the relative resource cost of treating the patient. 42 U.S.C. § 1395l(t)(3)(D).

**B.     The Medicare Wage Index**

21. In creating the IPPS system, Congress recognized that wages and wage-related costs represent a significant portion of a provider's costs in furnishing inpatient services, and that there is a wide degree of geographic variation in these costs.  Accordingly, Congress instructed the Secretary to identify the portion of the standardized amount that represents wages and wage-related costs (i.e., the labor-related share) and to adjust that portion for each hospital by a factor reflecting the relative wages of the hospital to all hospitals nationally. 42 U.S.C. § 1395ww(d)(3)(E)(i).  This is known as the wage index adjustment.

22.     The Secretary assigns wage index adjustments to hospitals based on geographic location. 69 Fed. Reg. 48915, 49026 (Aug. 11, 2004).  For wage index purposes, there are two types of geographic areas: urban areas and rural areas. The Medicare statute and the Secretary define an urban area as a Metropolitan Statistical Area ("MSA") (or a Metropolitan division where applicable) as defined by the Office of Management and Budget. 42 U.S.C. § 1395ww(d)(2)(D); 42 C.F.R. § 412.64(b)(ii)(A). A rural area is any area outside an urban area. 42 U.S.C. § 1395ww(d)(2)(D); 42 C.F.R. § 412.64(b)(ii)(C).

23.     The Secretary calculates one wage index adjustment for each urban area (i.e., MSA). *See* 69 Fed. Reg. 48916, 49026–34 (Aug. 11, 2004). For rural areas, the Secretary calculates one wage index adjustment for each state. *See id*. That is, each state has a wage index adjustment that is applied to all rural areas within the state.

24.     The Medicare statute requires the Secretary to update the wage index annually by conducting a survey of the wages and wage-related costs of all hospitals nationally.  42 U.S.C. § 1395ww(d)(3)(E).  To accomplish this, the Secretary collects wage and hour data from hospital cost reports.  84 Fed. Reg. 42044, 42301 (Aug. 16, 2019).  Using this data, the Secretary calculates the national average hourly wage ("AHW") and an AHW for each urban and rural area. 76 Fed. Reg. 51476, 51591–93 (Aug. 18, 2011).  The Secretary calculates the wage index adjustment for each urban and rural area by dividing the AHW for the area by the national AHW.  *Id*.

25.     The Medicare statute also requires the Secretary to adjust the portion of OPPS payments attributable to labor-related costs for geographic differences in wage costs. 42 U.S.C. § 1395*l*(t)(2)(D).  The Secretary has bound himself by regulation to use the wage index that he calculates for IPPS to adjust the labor-related portion of OPPS payments. 42 C.F.R. § 419.43(c).

## C.    Rural Reclassification

26.    In section 401 of the BBRA, Congress amended the Medicare statute to create a mechanism whereby some hospitals located in urban areas could be treated as being located in rural areas for purposes of the IPPS. Pub. L. No. 106-113, § 401, 113 Stat. 1501, 1501A-369 (1999); codified at 42 U.S.C. § 1395ww(d)(8)(E). Section 401 states in relevant part as follows:

> For purposes of *this subsection*, not later than 60 days after the receipt of an application (in a form and manner determined by the Secretary) from a *subsection (d)* hospital described in clause (ii), the Secretary shall treat the hospital as being located in the rural area (as defined in paragraph (2)(D)) of the State in which the hospital is located.

*Id*. (emphases added).

27.    The references in section 401 to "this subsection" and "subsection (d)" refer to 42 U.S.C. § 1395ww(d), which is the provision of the Medicare statute that governs IPPS payments.

28.    The Secretary has implemented BBRA section 401 in his regulations at 42 C.F.R. § 412.103. At the time the Secretary adopted this regulation, he stated that a hospital that reclassifies as rural under this provision "is treated as rural for all purposes of payment under the Medicare inpatient hospital prospective payment system (section 1886(d) of the Act) including … the wage index … as of the effective date of the reclassification." 64 Fed. Reg. 47025, 47030 (Aug. 1, 2000).

## D.    The Rural Wage Index

29.    Again, the Secretary annually calculates one rural wage index for each state that is applied to the payments for all hospitals located in rural areas of that state.

30.    The Secretary's methodology for calculating the rural wage index has evolved over the years.  Prior to FY 2024, the Secretary calculated the rural wage index for each state using the highest AHW resulting from the following three hospital demographic groups: (1) all

9

geographically rural hospitals (Calculation 1); (2) geographically rural hospitals that have not been redesignated under 42 U.S.C. §§ 1395ww(d)(8)(B) or (d)(10) (Calculation 2); or (3) all geographically rural hospitals plus reclassified rural hospitals unless they have been redesignated under 42 U.S.C. §§ 1395ww(d)(8)(B) or (d)(10), and out-of-state hospitals that have reclassified into the rural area of the state (Calculation 3). *See* 88 Fed. Reg. 58640, 58973-74 (Aug. 28, 2023) (describing the policies for calculating the rural wage index between FYs 2017 and 2023).

31.     This approach did not follow section 401's command to treat reclassified rural hospitals the same as geographically rural hospitals. The wage data of reclassified rural hospitals was categorically excluded from Calculations 1 and 2 and only included in Calculation 3 if the hospital had not been redesignated under 42 U.S.C. §§ 1395ww(d)(8)(B) or (d)(10).

32.     In the IPPS final rule for FY 2024, the Secretary changed his methodology for calculating the rural wage index. In that rule, the Secretary announced that his interpretation of the statute had changed, and that he now reads section 401 to mean that the wage data of reclassified rural hospitals must be treated exactly the same as the wage data of geographically rural hospitals in calculating the Medicare wage index. "[T]he best reading of section [401] of the Act is that it instructs CMS to treat [reclassified rural] hospitals the same as geographically rural hospitals *for the wage index calculation*." 88 Fed. Reg. 58640, 58972 (Aug. 28, 2023) (emphasis added).

33.     In practice, this meant that in Calculations 1, 2, and 3 of the rural wage index formula, the Secretary would treat the wage data of reclassified rural hospitals exactly as he treats the data of geographically rural hospitals. Specifically, starting in FY 2024, he included the wage data of reclassified rural hospitals in Calculations 1, 2 and 3. The table below depicts how Calculations 1, 2 and 3 were calculated before and after the FY 2024 change.

10

|  | Pre FY 2024 Methodology | FY 2024 and After |
|---|---|---|
| Calculation 1 | A | A + B |
| Calculation 2 | A – A1 | (A – A1) + (B – B1) |
| Calculation 3 | A + (B – B1) + C | A + B + C |

Legend
A = Geographically rural hospitals
A1 = Subset of A with MGCRB or LUGAR reclassification
B = Reclassified rural hospitals
B1 = Subset of B with MGCRB or LUGAR reclassification
C = Out-of-State hospitals reclassifying into the rural area of the state

34.    The Secretary explained that his decision to change course was "influenced by the fact that courts have largely adopted this interpretation." *Id*. at 58972; *see, e.g., Bates County Memorial Hospital v. Azar*, 464 F. Supp. 3d 43, 51 (D.D.C. 2020) ("Congress enacted a general command to treat [reclassified rural hospitals] as rural for purposes of Subsection (d)"); *Lawrence + Memorial Hospital v. Burwell*, 812 F.3d 257, 266-67 (2d Cir. 2016) ("By using the broad language 'for purposes of this subsection,' Congress mandated that specified hospitals be treated as rural for the purposes of the entire section… including the already-existing MGCRB application process.").

35.    Despite acknowledging that the methodology he used to calculate the rural wage indices in years prior to FY 2024 was *not* based on the "best reading" of the statute, the Secretary has not corrected his rural wage index calculations from prior years. To the contrary, he has only applied his new "best reading" approach on a prospective basis "beginning with FY 2024." 88 Fed. Reg. at 59383.

## E.    The Statutory Rural Floors

36.    Congress has enacted two provisions that establish a minimum wage index for urban hospitals. The first is in section 4410(a) of the Balanced Budget Act of 1997 ("BBA") Pub.

11

L. No. 105-33, § 4410(a), 111 Stat. 251, 405 (Aug. 5, 1997); 42 U.S.C. § 1395ww note. The provision states as follows:

> For purposes of section 1886(d)(3)(E) of the Social Security Act (42 U.S.C. 1395ww(d)(3)(E)) for discharges occurring on or after October 1, 1997, the area wage index *applicable* under such section to any hospital which is not located in a rural area (as defined in section 1886(d)(2)(D) of such Act (42 U.S.C. 1395ww(d)(2)(D)) may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located.

*Id.*[1] (emphasis added).

37.     The second provision is contained in 42 U.S.C. § 1395ww(d)(8)(C)(iii), which states as follows:

> The application of subparagraph (B) or a decision of the Medicare Geographic Classification Review Board or the Secretary under paragraph (10) may not result in the reduction of any county's wage index to a level below the wage index for rural areas in the State in which the county is located.

*Id.*[2]

38.     These provisions, known collectively as the "rural floor," protect hospitals located in urban areas (or counties) from being paid at a wage index that is lower than the wage index adjustment applicable to hospitals in rural areas of the same state.

39.     Prior to FY 2020, the Secretary interpreted the rural floor provisions to mean that hospitals located in urban areas must be assigned the greater of the wage index adjustment for their area or the wage index adjustment for rural areas in the same state. Indeed, the Secretary has

---

[1] Section 1886(d)(2)(D) of the Act (42 U.S.C. 1395ww(d)(2)(D)) defines an "urban area" as "an area within a Metropolitan Statistical Area" and a "rural area" as "any area outside such an area." Thus, a hospital can either be located in an urban area (if it is in an MSA) or a rural area (if it is not in an MSA).

[2] The Secretary explained the mechanics of section 1395ww(d)(8)(C)(iii) in the IPPS final rule for FY 2015. 79 Fed. Reg. 49,854, 50,371 (Aug. 22, 2014).

referred to the rural floors and rural wage index collectively as the "Statewide Rural Floor Wage Index." 76 Fed. Reg. 51476, 51813 (Aug. 18, 2011).

40.     However, in the IPPS rule for FY 2020, the Secretary deviated from the statute and devised a new methodology for calculating the rural floor separate and apart from the rural wage index. 84 Fed. Reg. at 42332-36.

41.     Under the Secretary's new methodology, "the area wage index applicable [to urban hospitals]" is not "the area wage index applicable … to hospitals located in rural areas in the State" as required by statute. BBA § 4410(a). Instead, the Secretary calculated a rural wage index that is applicable to rural hospitals and lower "rural floors" that are applicable to urban hospitals.

42.     More specifically, the Secretary calculated the rural floors for each state by including the wage and hour data of all geographically rural hospitals in the state (i.e., hospitals actually located in rural areas), but "without including the wage data of urban hospitals reclassified as rural under [section 401]." *Id*. at 42336.

43.     A group of thirty-four hospitals filed suit in federal court challenging the Secretary's calculation of the Statutory rural floors in FY 2020. *Citrus HMA, LLC v. Becerra*, 597 F. Supp. 3d 450 (D.D.C. 2022). Each hospital was assigned wage index adjustments in FY 2020 that were lower than the wage index adjustment applicable to rural hospitals within their states. The hospitals argued that the Secretary's decision to calculate the rural floor separately violated the statute because the rural floor provisions state that the rural floor must be equal to the rural wage index. On April 8, 2022, the District Court issued a decision siding with the hospitals and relying on the "statute's plain language":

> Because the Court finds that the rural floor provision unambiguously provides that the level of the rural floor for a state is set at the applicable rural wage index of that state—i.e., the rural floor and rural wage index are one and the same—Defendant's

13

> decision to calculate separately those indexes using different methodology violated the statute.  Put plainly, the statute provides no room for the Secretary to "fix" whatever anomalies he may think exists in the operation of the statute.  A court cannot set aside a statute's plain language simply because the agency thinks it leads to undesirable consequences in some applications.

*Citrus*, 597 F. Supp. 3d at 461.

44.    The court remanded the matter back to the Secretary for further proceedings.  In the IPPS final rule for FY 2023, the Secretary acquiesced to the *Citrus* decision on a prospective basis.  But the Secretary did not correct the rural floors for prior years.  87 Fed. Reg. 48780, 49004 (Aug. 10, 2022).

## F.    Medicare Cost Report Appeals

45.    The Secretary administers Medicare payments through Medicare Administrative Contractors ("MACs"), which process claims and audit cost reports.

46.    Throughout the fiscal year, hospitals receive interim Medicare payments from their MACs.  At year-end, the hospital submits an annual cost report identifying costs incurred in furnishing services to Medicare beneficiaries. 42 C.F.R. § 413.20.  The MAC audits the cost report and issues a notice of program reimbursement ("NPR"), which sets forth the MAC's final determination of Medicare reimbursement for the reporting period.  42 C.F.R. § 405.1803.

47.    A hospital that disagrees with its MAC's final determination may seek review before the Board.  42 U.S.C. § 1395*oo*.  The statute prescribes three requirements for Board review: (1) dissatisfaction with a MAC's final determination; (2) an amount in controversy of $10,000 or more for individual appeals or $50,000 or more in the aggregate for group appeals; and (3) filing within 180 days of the NPR.  42 U.S.C. § 1395oo(a)–(b).

48.    When the Board has jurisdiction over an appeal, but the appeal involves a statute, regulation, or policy that the Board is without authority to overturn, the Board may, through its

own motion or upon request of the provider, grant expedited judicial review ("EJR"). 42 U.S.C. § 1395oo(f)(1). The Board must issue a decision on a request for EJR within thirty days after the Board receives the request. 42 U.S.C. § 1395oo(f)(1). If the Board affirmatively grants EJR, the provider must file its complaint in federal district court no later than 60 days after receiving notice of the Board's grant of EJR. *Id.* If the Board fails to issue a decision within thirty days, a provider may likewise bring its appeal directly to federal district court within sixty days after the Board's thirty-day deadline. *Id.*

49.     The Medicare statute allows providers to bring a civil action pursuant to the Administrative Procedure Act through expedited judicial review. *See* 42 U.S.C. § 1395oo(f)(1).

50.     The Administrative Procedure Act provides that the "reviewing court shall . . . hold unlawful and set aside agency action . . . found to be . . . (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . [or] (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2).

## G.     The Self-Disallowance Regulation

51.     The Secretary has over the years attempted to retrofit a fourth requirement, described by the Supreme Court as a "presentment" requirement, into the three statutory conditions for Board relief. The Health Care Financing Administration ("HCFA"), the precursor to CMS, initially required providers to present all claims to their MACs in the first instance on their cost reports, even if the MAC had no authority to make the requested payment. At that time, HCFA reasoned that presenting an unallowable claim to the MAC was necessary to show the provider was "dissatisfied" with the amount of program reimbursement as that term is used in section 1395oo(a)(1)(A)(i). The Supreme Court rejected this interpretation in *Bethesda Hospital Association v. Bowen*, finding that presenting nonallowable claims to the MAC would be an

15

exercise in futility, observing that "[n]o statute or regulation expressly mandates that a challenge to the validity of a regulation be submitted first to the [MAC]." 485 U.S. 399, 404 (1988).

52.     The Secretary wrongly interpreted the *Bethesda* decision as an invitation to adopt a presentment requirement by regulation. In 2008, the Secretary subsequently adopted a regulation requiring hospitals to present unallowable claims to MACs as a condition for obtaining Board review. 42 C.F.R. § 405.1835(a)(1)(ii) (repealed). The United States District Court for the District of Columbia invalidated this regulation in *Banner Heart Hosp. v. Burwell*, 201 F. Supp. 3d 131 (D.D.C. 2016). The *Banner* court ruled that *Bethesda* was based on the statute's "plain meaning" and "language and design . . . as a whole," and that a regulatory presentment requirement was contrary to the statute. *Id.* at 140. The Secretary claimed to acquiesce in the *Banner* decision and does not require providers to go through the futile process of self-disallowing unallowable claims for cost reporting periods beginning before January 1, 2016.

53.     Cost reporting periods beginning on or after January 1, 2016 are controlled by the Secretary's third iteration of the self-disallowance (or presentment) requirement. In 2015 (while the *Banner* decision was pending), the Secretary adopted yet another regulation requiring hospitals to present futile claims to the MACs to gain access to Board relief. The new regulation, which applies to cost reporting periods beginning on or after January 1, 2016, states in relevant part as follows:

> In order for a provider to receive or potentially qualify for reimbursement for a specific item for its cost reporting period, the provider's cost report…must include an appropriate claim for the specific item, by…
>
> …
>
> (ii) Self-disallowing the specific item in the provider's cost report, if the provider seeks payment that it believes may not be allowable or may not comport with Medicare policy…

42 C.F.R. § 413.24(j) (emphasis added).

16

54.     Unlike the regulation struck down in *Banner*, the Board is not instructed to dismiss the provider's appeal if the provider does not comply with the current self-disallowance regulation. Under the Secretary's reasoning, *Bethesda* requires the Board to grant the provider a hearing.  But in an attempt to evade the holding of *Bethesda*, the Secretary's new regulation establishes the presentment requirement as a "[s]ubstantive reimbursement requirement for an appropriate cost report claim," i.e., a condition for receiving payment from the Medicare program.  Thus, although the Board must grant the provider a hearing on the merits, the Secretary's new regulations expressly prohibit the Board from permitting reimbursement for items that were not self-disallowed in the cost report.  Section 413.24(j)(5) of the regulation says that a "reviewing entity" such as the Board "may only permit reimbursement for the specific item under appeal solely to the extent authorized by § 405.1873(f)."  And section 405.1873(f)(1)(ii) says that an appeal item "is not reimbursable" if the Board makes the factual finding that the hospital "[d]id not include an appropriate cost report claim for the specific item under appeal."  In order to pay lip service to *Bethesda*, the regulation allows the Board to retain jurisdiction to hear the appeals of providers that have not complied with the self-disallowance regulation, but the regulation strips the Board of its power to "affirm, *modify*, or reverse a final determination of the" MAC as Congress granted in 42 U.S.C. § 1395oo(d) (emphasis added).  This third attempt to impose a presentment requirement is no more lawful than the prior two.

55.     In addition to being futile, the Secretary uses the presentment requirement to shield himself from liability for past payment errors that remain hidden from providers for years.  Once the error is eventually discovered and successfully challenged in court, the Secretary can cite the presentment requirement to deny the same relief to providers who did not "self-disallow" the lost payment on their cost reports solely because they were never aware it existed.

17

## V.    PROCEDURAL BACKGROUND

56.    The Plaintiff Hospital in this action was adversely affected by the Secretary's unlawful calculation of the rural wage index and rural floors in FYs 2019 through 2021.  In each of those years, the Secretary calculated rural wage indices for the Plaintiff's state using a formula that ignored section 401's command to treat reclassified rural hospitals the same as geographically rural hospitals.  This error had the effect of depressing the rural wage indices and rural floors for the state in which the Plaintiff Hospital is located.  And in FYs 2020 through 2022, the Secretary further depressed the rural floors by calculating them separately from the rural wage index—a violation of BBA § 4410(a) and 42 U.S.C. § 1395ww(d)(8)(C)(iii)—and excluding from that calculation the wage data of reclassified rural hospitals—a violation of section 401.  As a result of the Secretary's errors in calculating the rural wage indices and the rural floors, the Plaintiff Hospital was assigned wage indices that were lower than required by the Medicare statute.  The Secretary applied these wage indices to the Plaintiff Hospital's IPPS payments for FYs 2019 through 2021.  And by operation of its regulation at 42 C.F.R. § 419.43(c)(1), the Secretary applied the same unlawful wage indices to the Plaintiff's OPPS payments for CYs 2019 and 2020.

57.    Pursuant to the procedures set forth at 42 U.S.C. § 1395oo(a), the Plaintiff Hospital filed appeals with the PRRB from Notices of Program Reimbursement ("NPRs") challenging the Secretary's calculation of the rural wage indices and rural floors in the FYs and CYs overlapping with the cost reporting periods covered by their NPRs.  As the Board properly determined, the Plaintiff's appeals satisfied all jurisdictional requirements set forth at 42 U.S.C. § 1395oo(a)-(b).

58.    On May 19, 2026, the PRRB determined that it had jurisdiction to hear the Plaintiff's appeals, but that it lacked authority to decide the legal questions at issue in this case.  The Board found that it

18

does not have the authority to grant the relief sought by the Providers, namely invalidating the Uncodified Regulations on Rural Floor Calculation and Wage Index which they allege (1) does not treat reclassified "Section 401" hospitals as being located in a rural are as required by 42 U.S.C. § 1395ww(d)(8)(E), and (2) permits the assignment of a wage index to urban hospitals that is lower than the wage index assigned to rural hospitals in the same state . . . .

*See* Complaint Exhibit 2 (expedited judicial review determination). The Board, therefore, "grant[ed] the Providers' requests for EJR," "close[d]" the cases, and "remove[d] them from its docket." *Id.*

59.    In granting expedited judicial review, the PRRB determined that the Hospital had not complied with the Secretary's self-disallowance regulation. *See* Complaint Exhibit 2 at 14.

60.    The Plaintiff Hospital now files this civil action within 60 days of the date on which it received notification of the PRRB's expedited judicial review decision.

61.    Because the Secretary exceeded his statutory authority and acted arbitrarily and capriciously in calculating the rural wage index and rural floors in the FYs and CYs overlapping with its cost reporting periods covered by its NPRs, the Plaintiff Hospital brings this suit requesting that this Court set aside the Secretary's calculation of the rural wage indices and rural floors for those periods, and issue an order directing the Secretary to recalculate its wage indices and apply them to its IPPS and OPPS payments for the cost reporting periods covered by its NPRs.

## VI.    ASSIGNMENT OF ERRORS

62.    The Secretary's decision to exclude the AHWs of hospitals that have reclassified as rural under section 401 and 42 C.F.R. § 412.103 from Calculations 1, 2 and 3 in calculating the rural wage indices in FYs 2019 through 2021 violated section 401 of the BBRA, which provides that the Secretary "*shall* treat" a qualifying hospital "as being located in the rural area … of the State in which the hospital is located." 42 U.S.C. § 1395ww(d)(8)(E)(i) (emphasis added). Since the Secretary included the AHWs of hospitals that are located in a rural area in Calculations 1, 2,

19

and 3, section 401 required the Secretary to also include the AHWs of urban hospitals that have reclassified as rural in those calculations. Indeed, the Secretary "now agrees that the best reading of [the rural reclassification statute] is that it instructs CMS to treat [reclassified rural] hospitals the same as geographically rural hospitals for the wage index calculation." 88 Fed. Reg. at 59383.

63.     In addition, the Secretary's decision in FYs 2020 through 2022 to separately calculate the rural wage indices and the rural floors for each state violated BBA section 4410(a) and BBRA section 401. BBA section 4410(a) specifies that the wage index for hospitals in a state "may not be less than the area wage index applicable under such section to hospitals located in rural areas in the State in which the hospital is located." Pub. L. No. 105–33, § 4410(a), 111 Stat. 251, 402 (Aug. 5, 1997). That language unambiguously ties the rural wage index to the rural floor as this Court previously determined in *Citrus*. *Citrus*, 597 F. Supp. 3d at 461.

64.     Neither BBA section 4410(a) nor BBRA section 401 affords the Secretary discretion as to whether he will comply with their terms. Instead, these statutes are mandatory. *See, e.g.*, *Lopez v. Davis*, 531 U.S. 230, 231 (2001) ("Congress used 'shall' to impose discretionless obligations").

65.     The Secretary's obligations under these provisions are unequivocal. Section 4410(a) of the BBA requires the Secretary to ensure that a hospital's wage index is not less than the wage index that applies to hospitals located in rural areas in the same state. And section 401 of the BBRA requires the Secretary to treat a 401 hospital as if it were located in a rural area for the purposes of IPPS.

66.     The Secretary has also shirked his obligation to update the OPPS wage adjustment factors for CYs 2019 and 2020. The OPPS wage index regulation provides that "CMS uses the [IPPS] wage index established in accordance with Part 412 . . ." for OPPS purposes. 42 C.F.R. §

20

419.43(c)(1). Part 412, in turn, implements section 1886(d) of the Social Security Act. *See* 42 C.F.R. § 412.1(a)(1) ("This part implements sections 1886(d) . . . of the Act by establishing a prospective payment system for the operating costs of inpatient hospital services." (section 412.1 defines the "Scope" of Part 412, while subsection 412.1(a) defines the "Purpose" of Part 412)). Since 1) the OPPS wage index regulation says that it will follow the IPPS wage index regulation, and 2) the IPPS regulation says it is implementing the IPPS statute, these provisions taken together require the Secretary to follow the IPPS statutory requirements in calculating the OPPS wage index.

67.    In addition, consistent with his obligation set forth in that regulation, where IPPS wage adjustment factors are subsequently corrected, the Secretary recalculates OPPS payments based on the corrected IPPS adjustment factors. 69 Fed. Reg. 65682, 65843 ("The final wage indices used for payment in CY 2005 for OPPS will reflect the wage indices in the . . . IPPS final rule *and any subsequent corrections to that final rule*."); 71 Fed. Reg. 67960, 68013 ("As is our practice, we adopt changes made to the . . . IPPS wage index values after they have been finalized.").

68.    Insofar as the Secretary subsequently corrects the Plaintiff's IPPS adjustment factors for FYs 2019 through 2021, as he must, and subsequently applies those adjustment factors to the Plaintiff's IPPS payments for those years, 42 C.F.R. § 419.43(c)(1) requires him to adjust the Plaintiff's OPPS payments for CYs 2019 and 2020 by those same corrected adjustment factors.

## VII.    CLAIMS FOR RELIEF

## COUNT I

**Violation of the Medicare Statute and the Administrative Procedure Act: Agency Action Not in Accordance with Law**

69.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

70.    The Administrative Procedure Act, as incorporated into the Medicare statute, permits judicial review of agency actions, findings, and conclusions that are "not in accordance with law" or are "in excess of statutory jurisdiction, authority, or limitations."   5 U.S.C. §§ 706(2)(A), 706(2)(C).

71.    The Secretary's calculation of the rural wage indices and rural floors for FYs 2019 through 2021 was unlawful because it violates the plain meaning of the Medicare statute.

72.    Section 4410(a) of the BBA and 42 U.S.C. § 1395ww(d)(8)(C)(iii) specify that the wage index that is assigned to an urban hospital (or county) cannot be less than the wage index that is assigned to a rural hospital within the same state.  Furthermore, section 401 of the BBRA provides that the Secretary *shall* treat an urban hospital that reclassifies as rural under that provision as rural for all purposes of the IPPS.

73.    The methodology that the Secretary adopted for calculating the wage indices and rural floor in FYs 2019 through 2021 cannot be reconciled with section 4410(a) of the BBA, section 1395ww(d)(8)(C)(iii) or section 401 of the BBRA.

74.    The Secretary has acknowledged that "the best reading of section [1395ww](d)(8)(E) of the Act is that it instructs CMS to treat [reclassified rural] hospitals the same as geographically rural hospitals *for the wage index calculation*."  88 Fed. Reg. at 58972 (emphasis

22

added).  And this Court has held the Secretary's pre-2023 rural floor policy was unlawful.  *Citrus*, 597 F. Supp 3d at 461.

75.    Accordingly, the Secretary's calculation of the rural wage indices and rural floors for FYs 2019 through 2021 are plainly unlawful agency action.

76.    Because the Secretary is required by statute to correct the IPPS wage adjustment factors for FYs 2019 through 2021, he is also compelled by his own regulation at 42 C.F.R. § 419.43(c)(1) to correct the OPPS wage adjustment factors for CYs 2019 and 2020 to match the corrected IPPS wage adjustment factors for FYs 2019 through 2021.

## COUNT II

### Violation of the Medicare Statute and the Administrative Procedure Act: Arbitrary and Capricious Agency Action

77.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

78.    The Administrative Procedure Act, as incorporated into the Medicare statute, permits judicial review of agency actions, findings, and conclusions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

79.    The Secretary's methodology for calculating the rural wage indices and rural floors in FYs 2019 through 2021 is arbitrary, capricious, and an abuse of discretion because the Secretary did not follow the statutory requirements of section 401.

80.    The Secretary's methodology for calculating the rural floor in FYs 2020 through 2022 is also arbitrary and capricious because it results in urban hospitals being paid at a wage index that is lower than rural hospitals within the same state in clear violation of the plain text of section 401.

81.     Furthermore, because the Secretary is required by statute to correct the IPPS wage adjustment factors for FYs 2019 through 2021, it would be arbitrary and capricious for him to ignore his binding regulation at 42 C.F.R. § 419.43(c)(1) that requires him to apply those corrected IPPS wage adjustment factors to the Plaintiff Hospital's OPPS payments for those same years.

## COUNT III

### Violation of the Medicare Statute: Board Authority

82.     The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

83.     The Administrative Procedure Act instructs that a reviewing court "shall…hold unlawful and set aside agency action…found to be…not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)-(C), 42 U.S.C. § 1395oo(f).

84.     The Secretary's self-disallowance regulation is unlawful because Congress did not grant him authority to promulgate the rule in the first instance.  Without Congress's grant of authority, an agency "literally has no power to act."  *New York Stock Exch. LLC v. SEC*, 962 F.3d 541, 553 (D.C. Cir. 2020) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)).  As the Supreme Court observed in *Bethesda Hospital Ass'n v. Bowen*, no provision exists in which Congress granted the Secretary the authority to promulgate a self-disallowance requirement.  485 U.S. at 404.

85.     The Secretary's self-disallowance regulation is also unlawful because it conflicts with the Medicare statute.  When Congress enacted § 1395oo(d), it expressly granted the Board "the power to affirm, modify, or reverse a final determination of the [contractor] with respect to a cost report . . . ." 42 U.S.C. § 1395oo(d).  This section empowers the Board to "modify, or reverse a final determination of the [contractor] with respect to a cost report" and to compel the contractor

24

to pay amounts owed to the provider as reflected in the provider's cost report.  42 C.F.R. §§ 413.20(b), 405.1803(a).

86.    When the Supreme Court interpreted "the plain language" of § 1395oo(d), the Court observed that "[t]he only limitation prescribed by Congress [in § 1395oo(d)] is that the matter must have been 'covered by such cost report,' that is, a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *Bethesda Hosp. Ass'n v. Bowen*, 485 U.S. at 406.

87.    Accordingly, the Secretary's regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are contrary to the Medicare statute because the regulations impermissibly constrain the authority granted by 42 U.S.C. § 1395oo(a)(1)(A)(i) to the Board to decide a provider's dissatisfaction with "the amount of total program reimbursement due the provider."  42 U.S.C. § 1395oo(a)(1)(A)(i).

## COUNT IV

### Violation of the Administrative Procedure Act: Arbitrary and Capricious Agency Action – Board Authority

88.    The allegations set forth in the preceding paragraphs are incorporated by reference as if fully set forth herein.

89.    Agency action is arbitrary and capricious when the agency "relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."  *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

90.    Agency action fails the arbitrary and capricious test when it fails to demonstrate "reasoned decision making."  *Id*. at 52; *see also Nat'l Telephone Co-op. Ass'n v. FCC*, 563 F.3d

25

536, 540 (D.C. Cir. 2009) ("The APA's arbitrary-and-capricious standard requires that agency rules be reasonable and reasonably explained.").

91.    The Secretary's self-disallowance regulation fails to show reasoned decision-making because the regulation contradicts the plain language of the statute and courts have now twice informed the Secretary that a protest requirement is unlawful.  Congress granted to the Board the authority to decide issues brought to it by providers related to "the amount of the total program reimbursement due the provider."  42 U.S.C. § 1395oo(a)(1)(A)(i).

92.    In direct contrast, the Secretary's regulations take that power away from the Board and prevent the Board from deciding the amount of total program reimbursement due to the provider.  In addition, the rationales the Secretary provided for the imposition of the self-disallowance regulation do not withstand scrutiny and are belied by how the requirement is applied in practice which is solely as a technical filing requirement to be used by the Secretary and his agents to shield himself from liability and deny Medicare reimbursement that is otherwise required by statute and binding regulations.

93.    The self-disallowance regulation is also arbitrary and capricious because, in promulgating this regulation, the Secretary did not explain how he reconciled his policy with the Board's statutory authority to decide Medicare reimbursement disputes.  Because the regulations at 42 C.F.R. §§ 413.24(j) and 405.1873 are arbitrary and capricious and an abuse of discretion, they are unlawful and invalid.

## VIII.   REQUEST FOR RELIEF

For all the foregoing reasons, the Plaintiff respectfully requests that this Court:

(a)    Declare invalid and set aside the Secretary's calculation of the rural wage indices in FYs 2019 through 2021;

(b)    Declare invalid and set aside the Secretary's calculation of the Rural Floors for FYs 2020 through 2022;

(c)    Direct the Secretary to recalculate Plaintiff's wage indices and related Medicare reimbursement for the cost reporting periods at issue by treating reclassified rural hospitals the same as geographically rural hospitals for purposes of calculating the rural wage index and rural floors, and calculating rural floors that are equal to the rural wage index;

(d)    Direct the Secretary to recalculate Plaintiff's related Medicare IPPS and OPPS reimbursement for the appealed periods using the corrected lawfully calculated wage indices;

(e)    Direct the Secretary to make prompt payment to Plaintiff of all additional Medicare reimbursement owed as a result of the corrected calculations, plus interest calculated in accordance with 42 U.S.C. § 1395oo(f)(2);

(f)    Award Plaintiff its costs and attorneys' fees as appropriate;

(g)    Provide such other relief as the Court may consider just and proper.

Date: July 20, 2026                    Respectfully submitted,

*Attorneys for Plaintiff*